UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff*, <br> <br> vs. <br> <br> CALVIN T. BROWN, <br> *Defendant*. | ) <br> ) <br> )    2:14-cr-00019-JMS-CMM-1 <br> ) <br> ) <br> ) <br> ) |

## **ORDER**

Presently pending before the Court is a Motion to Strike Mandatory Minimum Sentence Enhancements filed by Defendant Calvin Brown. [Filing No. 55.] For the following reasons, the Court **DENIES** the motion.

## I.
### BACKGROUND

On July 8, 2014, the grand jury returned an indictment against Mr. Brown alleging one count of conspiracy to distribute methamphetamine and two counts of attempting to possess with intent to distribute methamphetamine.[1] [Filing No. 1.] The Government filed an Information on July 10, 2014 (the "Section 851 Information"), alleging that Mr. Brown had a prior felony drug conviction. [Filing No. 14.]

The Court held a bench trial on July 21 and July 22, 2014.[2] The Court acquitted Mr. Brown of the conspiracy count, but found him guilty of the two counts of attempting to possess with intent

---

[1] Mr. Brown was originally indicted on March 26, 2013 for conspiracy to possess with the intent to distribute 500 grams or more of a methamphetamine mixture and a cocaine base mixture. On July 9, 2014, the Indictment was dismissed without prejudice as it related to Mr. Brown.

[2] Mr. Brown filed a written waiver of the thirty days he was provided from the date of his first appearance to trial under 18 U.S.C. § 3161(c)(2). [Filing No. 26.]

1

to distribute methamphetamine. [Filing No. 37.] The Court found that Mr. Brown attempted to and did distribute at least fourteen grams of pure methamphetamine on both February 16, 2013 and March 2, 2013, for a total of twenty-eight grams. [Filing No. 41 at 6.]

If the Government had not filed the Section 851 Information relating to Mr. Brown's prior drug-related conviction, [Filing No. 14], Mr. Brown's mandatory minimum sentence on Counts 2 and 3 would have been five years. 21 U.S.C. § 841(b)(1)(B)(viii). The filing of the Section 851 Information doubled Mr. Brown's statutory mandatory minimum sentence to ten years. 21 U.S.C. § 841(b)(1)(B).

Under the sentencing guidelines, Mr. Brown has twelve criminal history points (from previous criminal convictions and for committing the instant offense while on parole). [Filing No. 58 at 12.] Not considering his career offender status, Mr. Brown's twelve criminal history points alone put him at a criminal history category of V. [Filing No. 58 at 12.] With that criminal history category and an offense level of 26, Mr. Brown's guideline range would be 110-137 months. U.S.S.G. § 2D1.1(c). But with his career offender status, Mr. Brown's guideline range would be 360 months to life imprisonment. U.S.S.G. § 4B1.1(b)(1).

Mr. Brown's sentencing ranges are set forth in the Presentence Investigation Report. [Filing No. 58.] Mr. Brown objected to the Presentence Investigation Report on only two bases: (1) to his factual innocence; and (2) to his classification as a Career Offender. [Filing No. 58 at 22.]

## II.
### DISCUSSION

Mr. Brown sets forth several arguments in support of his request that the Court strike the mandatory minimum sentence enhancements provided under 21 U.S.C. § 851. The Court will address each one in turn.

2

### A. Department of Justice Policy

First, Mr. Brown argues that the Department of Justice ("DOJ") has set forth criteria for when an Information under Section 851 should be filed, and that none of those criteria applies to his situation. [Filing No. 56 at 9-10.] Mr. Brown argues that the only criteria potentially applicable to his situation – "the nature of the defendant's criminal history, including any prior history of violent conduct or recent prior convictions for serious offenses" – does not apply because his only two recent convictions (from 2003 and 2007) should not be considered "serious" since they only involved 1.03 grams of crack cocaine and 2.4 grams of crack cocaine, respectively. [Filing No. 56 at 10.] Mr. Brown also notes that "no drugs were seized from [him] in this federal prosecution. Nonetheless, 28 grams of methamphetamine have been attributed to him from the wiretap phone calls admitted during his trial." [Filing No. 56 at 10.]

The Government responds that DOJ policy "confers no rights on a defendant enforceable in court." [Filing No. 62 at 3.] The Government argues that Mr. Brown's criminal history is enough to trigger the filing of an Information under Section 851 in any event, because he is considered a Career Offender under the guidelines and that, at the age of 36: (1) he has been convicted eleven times; (2) he was an adult for seven of those convictions; (3) four of his convictions were for felonies; (4) two of those convictions were in the last eleven years; and (5) his parole was revoked for the last two drug dealing felony convictions. [Filing No. 62 at 3.] Accordingly, the Government argues, the filing of the Section 851 Information was not unfair or unjust. [Filing No. 62 at 3.]

The Seventh Circuit Court of Appeals has instructed that prosecutorial acts are not validated by DOJ policies. *See Matter of Klein*, 776 F.2d 628, 635 (7th Cir. 1985) (stating that a subpoena issued by the grand jury "does not draw its force from the will of the Department of

3

Justice. Guidelines of this sort are similar to guidelines about the exercise of prosecutorial discretion. They may enable the Department to control those in the field, but once an agent of the Department acts, the legal status of that act depends on other rules of law"). Similarly, DOJ policies do not confer any rights on a defendant. They are merely guidelines, and do not provide Mr. Brown with any rights that are not provided by law.

In any event, the Court does not find the filing of the Section 851 Information inconsistent with DOJ policies. Mr. Brown does have "recent prior convictions for serious offenses," as set forth by the Government. The Court finds particularly significant the timing of Mr. Brown's offenses. Specifically, Mr. Brown was released to a Community Transition program in August 2002 after serving time for a drug offense. [[Filing No. 58 at 11](Filing No. 58 at 11).] Just nine months later, in May 2003, he committed another drug offense that resulted in incarceration. [[Filing No. 58 at 12](Filing No. 58 at 12).] Then, in February 2006, Mr. Brown was released to probation and six months later, in August 2006, Mr. Brown committed another felony drug offense. [[Filing No. 58 at 12](Filing No. 58 at 12).] After being incarcerated for the August 2006 offense, Mr. Brown was released to parole on June 17, 2012, and was arrested for the offense at issue in this case, resulting in revocation of his parole, just nine months later in March 2013. [[Filing No. 58 at 6](Filing No. 58 at 6); [Filing No. 58 at 12](Filing No. 58 at 12).] This timeline is telling, and indicates that Mr. Brown's criminal history is significant, serious, and repetitive. So, while DOJ policies do not confer any rights on Mr. Brown in any event, his criminal history supports the filing of the Section 851 Information and the DOJ policy.

### B. Fifth Amendment Due Process Rights

Mr. Brown argues that, although he was aware during plea negotiations that an 851 Information would likely be filed, he viewed the threat of that filing as a coercive act that would only take place if he did not plead guilty, and not as an act tied to his criminal history. [Filing No.

56 at 11-12.] Mr. Brown also argues that "[a]dding to [his] frustration with being unduly singled out for enhanced punishment has been an inability for him to see a 'pattern or policy of when or why a defendant receives a § 851 enhancement....'" [Filing No. 56 at 12.]

The Government responds that 21 U.S.C. § 841 provides that "[i]f any person commits such a violation after a prior conviction for a felony drug offense…such person shall be sentenced…," so "[t]he statutory authority for the increase in mandatory minimums in drug crimes when the defendant has a prior qualifying conviction does not suggest that the increase is discretionary." [Filing No. 62 at 4.] The Government also notes that the only reason an increase in the mandatory minimum sentence is discretionary is because 21 U.S.C. § 851 requires the Government to file a formal Information and, if it does not do so, the mandatory minimum does not take effect. [Filing No. 62 at 4.] The Government concludes by stating that it "never sought Brown's cooperation or suggested any consequences to him that was not the direct and natural consequence of the law if he exercised his right to trial." [Filing No. 62 at 4.]

The filing of the Section 851 Information is sanctioned by law. Mr. Brown cannot show that his constitutional right to due process has been violated because the Government did something it was allowed to do under the law. *See U.S. v. Johnson*, 469 Fed. Appx. 632, 640 (9th Cir. 2012) (defendant could not "rely on the filing of the § 851 enhanced penalty information following failed plea negotiations, alone," to support a claim that he was deprived of due process); *U.S. v. Franklin*, 547 F.3d 726, 735 (7th Cir. 2008) ("the Supreme Court and this court have consistently held that mandatory minimum sentences are not a violation of a defendant's due process rights"). And in any event, even if a due process violation could be established by showing that the prosecution was somehow vindictive in filing the Section 851 Information, Mr. Brown does not present any evidence that this was so or that, for example, the Government somehow used

5

the filing of the Section 851 Information as a bargaining chip in the plea negotiations. The Court rejects Mr. Brown's due process argument.

### C. Eighth Amendment Right to be Free from Cruel and Unusual Punishment

Mr. Brown argues that mandatory minimum sentences as applied to him, "a street level dealer according to his criminal history," constitute cruel and unusual punishment because they are disproportionate to the offenses he is convicted of in this case. [Filing No. 56 at 13.] Mr. Brown notes that he had no weapons, did not engage in violence, and no seized drugs were attributable to him. [Filing No. 56 at 16.] The Government responds that Mr. Brown's penalty is proportional to the gravity of the offense, and that given his recommended guideline sentence of 360 months to life in prison, a floor of ten years is not "unconstitutionally disproportional." [Filing No. 62 at 5.]

"Only extreme sentences that are 'grossly disproportionate' to the crime will be deemed cruel and unusual." *U.S. v. Nigg*, 667 F.3d 929, 938 (7th Cir. 2012). The Seventh Circuit Court of Appeals considers three factors in determining whether a sentence is grossly disproportionate: "(1) 'the gravity of the offense and the harshness of the penalty'; (2) 'the sentences imposed on other criminals in the same jurisdiction'; and (3) 'the sentences imposed for commission of the same crime in other jurisdictions.'" *Id.* (quoting *Solem v. Helm*, 463 U.S. 277, 292 (1983)). The first factor "generally presents an insurmountable bar," *Nigg*, 667 F.3d at 938, and the Court finds that to be the case here. As discussed above, the quantity and timing of Mr. Brown's prior offenses are instructive, and indicate that a mandatory minimum sentence of ten years is not "grossly disproportionate." His history of drug offenses, which repeatedly occurred shortly after his release for prior offenses, is troubling and justifies the mandatory minimum sentence here.

Additionally, the guidelines suggest that Mr. Brown's minimum sentence, with his career offender status, would be 360 months. Even without the career offender status, his minimum sentence under the guidelines would be 110 months. Based on the advisory guideline ranges alone, the Court finds that a mandatory minimum sentence of ten years or 120 months, as set forth in Section 851, is not "grossly disproportionate" to the crimes of which Mr. Brown has been convicted.

### D. The Rule of Lenity

Finally, Mr. Brown argues that the Court can use the Rule of Lenity to reduce his sentence because his recommended sentence is too severe. [Filing No. 56 at 17-20.] The Government responds that the Rule of Lenity only applies when "there is ambiguity in a statute with criminal consequences," and then "any ambiguity should be construed in favor of the result that is more lenient for the defendant." [Filing No. 62 at 6.]

The Seventh Circuit Court of Appeals has described the Rule of Lenity as the United States Supreme Court has: "'we have always reserved lenity for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute.'" *U.S. v. Natour*, 700 F.3d 962, 973 (7th Cir. 2012) (emphasis in original) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). Mr. Brown has not pointed to any ambiguity in Section 851, and none exists as it relates to Mr. Brown's circumstances. Accordingly, the Rule of Lenity has no application here.

### III.
#### CONCLUSION

As the Seventh Circuit has stated, "'[p]unishment for federal crimes is a matter for Congress, subject to judicial veto only when the legislative judgment oversteps constitutional bounds.'…[R]elief from any unfairness flowing from mandatory minimum sentences must come

7

from the legislature, not the judiciary." *Nigg*, 667 F.3d at 939 (citation omitted). For the reasons set forth above, the Court **DENIES** Mr. Brown's Motion to Strike Mandatory Minimum Sentence Enhancements. [Filing No. 55.] Mr. Brown's sentencing hearing will be scheduled by separate order.

January 9, 2015

*[signature: Jane Magnus-Stinson]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**